UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------    x
                                                       :
UNITED STATES OF AMERICA                               :
                                                       :
            - v -                                      :        25 Cr. 331 (DEH)
                                                       :
MICHAEL GANN,                                          :
                                                       :
                          Defendant.                   :
---------------------------------------------------    x

**REPLY SENTENCING MEMORANDUM ON BEHALF OF
MICHAEL GANN**


                              TAMARA GIWA, ESQ.
                              Federal Defenders of New York, Inc.
                              Attorney for Defendant
                              MICHAEL GANN
                              52 Duane Street - 10th Floor
                              New York, New York 10007
                              Tel.: (212) 417-8700

                              MARTIN S. COHEN
                              *Of Counsel*


TO:    JAY CLAYTON, ESQ.
       United States Attorney
       Southern District of New York
       One. St. Andrew's Plaza
       New York, New York 10007
       Attn:   CHELSEA SCISM, ESQ.
               JONATHAN BODANSKY, ESQ.
               Assistant United States Attorneys

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

May 6, 2026

*By ECF*

Honorable Dale E. Ho
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *United States v. Michael Gann*, 25 Cr. 331 (DEH)

Dear Judge Ho:

I write to reply to the Government's argument that Michael Gann intended to harm other people and therefore the Court should impose a more extensive term of incarceration. *See generally* Dkt. No. 29, Government Sentencing Submission. For the reasons set forth in our submission and as further discussed below, Mr. Gann did not intend to harm anyone, and the Court should reject the Government's highly speculative assertions to the contrary. *Cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) (explaining that where the Government seeks increased punishment, it bears "the burden of proving that the circumstances warrant such an increase.").[1]

1.   *The Government ignores the context surrounding Mr. Gann's conduct.*

The Government's highly speculative version of the offense tries to tell the story of a dangerous loner, threatening harm against Jews, who embarks on a project to build destructive devices with the intention of hurting others, but – before he can finish making these devices – is arrested. But this story does not square with the context of Mr. Gann's actual conduct, which I described at length in my submission, and which the Government ignores in its response. *See* Dkt. No. 28, Defendant's Sentencing Submission, at 2-4 (hereinafter "Def.'s Sub."). Mr. Gann's

---

[1] The issue here is not so much what the underlying facts are, but what inferences the Court should draw from those facts. To the extent there are disputed facts, I have flagged the discrepancies in my sentencing submission. The most important of these disputes regards paragraph 14 of the PSR, *see* Def. Sub. at 3-4, to which the Government did not respond directly, other than to acknowledge that Witness-1 had in fact said that he had dissuaded Mr. Gann from attaching metal to the cardboard tubes of the firecrackers. *See* Gov't Submission at 3 n.4. There is also a dispute concerning paragraph 12 of the PSR: whether, in addition to Witness-1, Mr. Gann also mixed and lit the explosive material in Witness-1's backyard on June 4, 2025. *See* Def. Sub. at 3; Gov't Sub. at 2. I don't think this a particularly material fact, but my review of the body-worn camera footage of Witness-1's statements to police on June 5, 2025 indicates that Witness-1 told the police that only he mixed and lit the chemicals, after which he asked Mr. Gann to take the explosive materials and leave.

Honorable Dale E. Ho                                                                                          Page 2
May 6, 2026

Re:        *United States v. Michael Gann*, 25 Cr. 331 (DEH)

intentions were to make powerful firecrackers, commonly referred to as M-80s, with his friend, Witness-1, for their amusement. Mr. Gann's discussion of attaching shotgun shells to the exterior of the cardboard tubes was made in the context of exploding the firecrackers in his friend's backyard; Witness-1 explained that he dissuaded Michael from doing so, and there is *no evidence* that Mr. Gann ever took any steps to attach anything to the cardboard exterior of the firecrackers after he left his friend's house.

When Witness-1 told Mr. Gann that he had to take the material with him and could not make the firecrackers at Witness-1's house, Mr. Gann did not suddenly decide that instead of exploding firecrackers in his friend's backyard he was instead going to try to hurt people. As argued, the disparate social media posts cited by the Government and Mr. Gann's disparaging comments about the Jews in the neighborhood do not evince an intent to physically harm others. *See* Def. Sub. at 4-6. As Witness-1, who had known Mr. Gann since they were children, explained to the police, and later to representatives of our office, Mr. Gann made disparaging comments about many different ethnic groups, but this had nothing to do with his purchase of explosive materials or his plans for making the firecrackers. While Witness-2 told the police that he thought Mr. Gann made an implicit threat by purportedly pointing in the direction of a Jewish school, there is no evidence supporting that assumption.

   2. *Mr. Gann's falsely telling law enforcement that he had disposed of the explosive material does not mean that he intended to harm other people.*

After his arrest, Mr. Gann falsely told law enforcement that he had thrown out all of the explosive material, when in fact, that material, along with around five powerful firecrackers that he had already made, remained on the rooftop in SoHo where he had been living for many years. But the fact that Mr. Gann was not truthful about his continued possession of the material does not mean that he was planning to use those firecrackers to harm others. There are many other reasons why a person in Mr. Gann's position would lie to the police, including an assumption that being truthful with law enforcement about his continued possession of explosive material would get him into more trouble, and the certainty that being truthful would lead to his having to leave the rooftop where he has lived safely, but illegally, for years. Moreover, many of Mr. Gann's web searches in the hours before his arrest were inquiries into how to safely *dispose* of the material. *See* Def. Sub. at 4.

   3. *Throwing unlit firecrackers off of the Williamsburg Bridge does not mean that Michael intended to harm others.*

Michael told the police that he had thrown three of the firecrackers off of the Williamsburg Bridge, unlit, in an attempt to throw them into the water, and that one of them had landed on the train tracks, where it was, in fact, recovered. The Government argues that Mr. Gann could not have been trying to throw the firecrackers in the water, because he threw them in the direction of the train tracks. *See* Gov't. Sub. at 8. While a person could find more convenient places to throw firecrackers into the water, the Government is mistaken in asserting that the structure of the Williamsburg Bridge is such that Mr. Gann could not have been trying to throw the devices into the water. On the Williamsburg Bridge, the water is directly *under* the train

Honorable Dale E. Ho                                                                                  Page 3
May 6, 2026

Re:       *United States v. Michael Gann*, 25 Cr. 331 (DEH)

tracks, and there are large gaps through which a two-inch firecracker could easily fall. *See* Photograph, attached as Exhibit A.



   Indeed, it would be virtually impossible to throw something into the water from the pedestrian walkway if a person was facing away from the tracks. There is a high fence on the outer side of the pedestrian walkway, and an entire lane of traffic. (There are two lanes of automobile traffic in each direction on the Williamsburg Bridge. One lane is under the pedestrian walkway; the other lane is on the outer side of the bridge, between the pedestrian walkway and the water. *See id.*)

   In sum, the Government's theory that Michael Gann intended to harm others when he made the powerful firecrackers here is highly speculative and deeply flawed, and the Court should find – consistent with the evidence – that Mr. Gann did not intend to harm anyone. This does not mean that the Court should condone Mr. Gann's conduct, or that his reckless behavior did not create the potential for harm to him or others. But Mr. Gann's lack of harmful intent, along with his other unique characteristics, strongly support the imposition of a sentence of time served, reflecting the 11 months that Mr. Gann has been incarcerated at the Metropolitan Detention Center. Here, such a sentence will best satisfy all the purposes of sentencing.

           Respectfully submitted,

           /s/ _____

           Martin S. Cohen
           Ass't Federal Defender
           Tel.: (646) 588-8317

Cc.  All counsel of record

# Exhibit A

